NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD KREMP, | : |
| Plaintiff, | : Civ. No. 09-2847 (GEB) |
| v. | : |
| WACHOVIA BANK, N.A., | : **MEMORANDUM OPINION** |
| Defendant. | : |

**BROWN, Chief Judge**

This matter comes before the Court upon the motion for summary judgment filed by Defendant Wachovia Bank ("Wachovia" or "Defendant") on the age discrimination claim of Plaintiff Richard Kremp. (Doc. No. 11.) The Court has reviewed the parties' submissions and decided this motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will grant Defendant's motion for summary judgment.

**I.   BACKGROUND**

    **A.   Facts**

Plaintiff was employed by Wachovia Bank or its predecessors from 1984 to 2008. (Def.'s R. 56.1 ¶ 1; Pl.'s R. 56.1 ¶ 1.) From July 1998 until his termination, Plaintiff was a Financial Sales Leader (Def.'s R. 56.1 ¶ 5; Pl.'s R. 56.1 ¶ 5); as such, Plaintiff supervised approximately twenty people within Somerset County, the geographical area assigned to him. (Kremp dep. 42:2-4; Def.'s R. 56.1 ¶ 9; Pl.'s R. 56.1 ¶9.) Plaintiff's employment was terminated on November 17, 2008, and he was forty-seven years old at that time. (Def.'s R. 56.1 ¶¶ 1, 2; Pl.'s

R. 56.1 ¶¶ 1, 2.)

Plaintiff contends that he was terminated from employment as a result of discrimination based on his age.  (Compl. ¶ 43.)  Plaintiff supports these allegations in his complaint with assertions that his supervisor, Peter Ameen, "made several comments that constitute significant evidence of age-based animus toward him [which] included the following:

>     11/20/07 - 'Maybe one of the younger leaders can do what you can't.'
>
>     3/7/08 - 'You're a dinosaur around here and there's a target on your back.'
>
>     4/9/08 - 'You better find out what your younger leader peers are doing.'"

(*Id*. at ¶ 13.)  In addition, Plaintiff alleges that "[y]ounger employees with true job performance issues have maintained their employment at Wachovia, while this older male [Plaintiff] with outstanding credentials has been terminated with no notice, without warning, and without any legitimate business purpose."  (*Id*. at ¶ 31.)

Defending against Plaintiff's age discrimination allegation, Wachovia states that Plaintiff's misconduct, in various forms, was the non-discriminatory reason for Plaintiff's termination from employment.  Specifically, Wachovia presents evidence that Plaintiff was terminated from employment after:

> improperly using the bank's own accounts to pay or refund customer fees in order to increase sales of bank products and improve his production numbers . . . improperly using those same accounts to make a purchase . . . hiding his activities by falsifying documents, for example by allocating individual improper expenditures among multiple bank branches, so that they would remain 'under the radar' by appearing as a series of small transactions . . . instructing and encouraging his subordinates to engage in similar activity [and] failing to cooperate in Wachovia's investigation of such activity.

(Def.'s Mot. Br. at 10-11; Def.'s R. 56.1 ¶¶ 68-146.)  In support of these allegations, Wachovia

presents copies of General Ledger ("GL") tickets that show Plaintiff's signature or indicate Plaintiff's approval of purportedly inappropriate disbursements. (Gousman Cert. Ex. P-2; Sisto Cert. Ex. D-14, D-15, D-16, D-27, D-28, D-29, D-31, D-33, D-35.) Additionally, Wachovia presents copies of notes taken by investigators who interviewed Plaintiff. (*Id.*) Plaintiff responds to these allegations with general denials or contentions that he is without sufficient information with which to admit or deny the allegations. (Pl.'s R. 56.1 ¶¶ 68-146.)

### B. Procedural History

On May 4, 2009, Plaintiff filed the instant complaint against Wachovia in New Jersey Superior Court. (Notice of Removal; Doc. No. 1.) Wachovia removed the action to this Court on June 11, 2009, citing diversity of the parties. (*Id.*) Plaintiff's complaint levies one count against Wachovia, and asserts that Wachovia's actions constituted "unlawful employment practices and unlawful discrimination" based upon age in violation of N.J.S.A. § 10:5-1 *et seq.*, New Jersey's Law Against Discrimination ("NJLAD"). (Compl.; Doc. No. 1.) On June 25, 2010, Wachovia filed the present motion for summary judgment. (Doc. No. 11.) On July 19, 2010, Plaintiff filed its opposition to Wachovia's motion for summary judgment. (Doc. No. 18.) On August 9, 2010, Wachovia filed a reply brief in further support of its motion for summary judgment. (Doc. No. 22.)

To remedy Wachovia's alleged discrimination, Plaintiff seeks "compensatory damages including lost wages (back and front pay), lost benefits, emotional distress damages, and monetary loss," as well as punitive damages, attorneys' fees and costs, and prejudgment interest. (Compl.) Wachovia argues, on various legal and factual grounds, that it is entitled to summary judgment on Plaintiff's NJLAD claims. (Def.'s Mot. Br.; Doc. No. 11) Plaintiff opposes

Wachovia's motion for summary judgment, and argues that there are genuine issues of material fact in dispute that necessitate a trial. (Pl.'s Opp'n. Br.; Doc. No. 18.) After reviewing the parties' submissions, the Court concludes that summary judgment should be granted to Wachovia because Plaintiff's NJLAD discrimination claim fails as a matter of law.

## II. DISCUSSION

### A. Summary Judgment Standard

A party seeking summary judgment must "show that . . . [it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). The moving party carries the burden of showing "the absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In countering a motion for summary judgment, the nonmoving party has the burden of "showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e)(2). The nonmoving party "may not rely merely on allegations or denials" but must present "specific facts." *Id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("[nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 587; *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

### B. NJLAD Claim Analysis Under the *McDonnell Douglas* Framework

NJLAD bans unlawful employment practices and employment discrimination on the basis of certain enumerated attributes, including age. *See* N.J. Stat. Ann. § 10:5-12. Age discrimination claims under NJLAD are "governed by the same standards and allocations of burdens of proof" as claims brought under 29 U.S.C. § 621 *et seq*, the Age Discrimination in Employment Act of 1967 ("ADEA"). *Lawrence v. Nat'l Westminster Bank*, 98 F.3d 61, 65 (3d Cir. 1996). Thus, to analyze NJLAD claims, the New Jersey Supreme Court has adopted the three-step analysis developed by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (*Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 210 (1999)), which has been modified by the U.S. Supreme Court's decision in *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343 (2009).[1] In *Gross*, the U.S. Supreme Court held that ADEA does not authorize mixed-motives age discrimination claims; rather, "a plaintiff must prove that age was the 'but for' cause of the employer's adverse decision." 129 S.Ct. at 2350. Furthermore, the Court held that the burden of persuasion in ADEA claims never shifts from the plaintiff to the defendant. *Id*. at 2351. The Court of Appeals for the Third Circuit, applying *Gross*, found that it does not conflict with continued application of the *McDonnell Douglas* framework to age discrimination cases, since the *McDonnell Douglas* burden-shifting scheme only shifts the burden of production, not the burden of persuasion, to the defendant. *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009). Thus, *McDonnell Douglas* is applicable here.

At the first stage of *McDonnell Douglas* analysis, the plaintiff bears the burden of establishing a prima facie discrimination claim. *McDonnell*, 411 U.S. at 802. Establishing a

---

[1] Although the U.S. Supreme Court has not "definitively decided whether the evidentiary framework of [*McDonnell Douglas*] utilized in Title VII cases is appropriate in the ADEA context" (Gross, 129 S.Ct. at 2349 n.2), the Court of Appeals for the Third Circuit has held that the framework does apply. Fakete v. Aetna, Inc., 308 F.3d 335, 338 n.3 (3d Cir. 2002).

prima facie claim for age discrimination in violation of the ADEA requires the plaintiff to prove that the plaintiff was: 1) a member of the protected class; 2) the subject of an adverse employment action taken by the defendant; 3) qualified for the position; and 4) replaced by someone "sufficiently younger . . . to create an inference of age discrimination." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997); *see also Smith*, 589 F.3d at 689.

If the plaintiff carries this burden, the analysis proceeds to the second stage, wherein the burden of production shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate, non-discriminatory motive for its action. *McDonnell*, 411 U.S. at 802. However, because "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff, the defendant is merely required to articulate, not prove, his non-discriminatory motive." *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If the defendant does not articulate such a motive, the court must enter a judgment for the plaintiff "because no issue of fact remains in the case." *Id*. at 254. However, if the defendant meets its burden, the analysis proceeds to the third and final stage of establishing pretext.

At the pretext stage, the burden of production shifts back to the plaintiff to show that the defendant's articulated motive was a pretext for discrimination. *McDonnell*, 411 U.S. at 807. Pretext, for purposes of *McDonnell Douglas* analysis, is defined as "a 'purpose or motive alleged or an appearance assumed in order to cloak the real intention or state of affairs;' in essence, pretext is a 'cover-up' for a discriminatory purpose." *Bowles v. City of Camden*, 993 F. Supp. 255, 262 (D.N.J. 1998) (quoting *Loeb v. Textron*, 600 F.2d 1003, 1012 (1st Cir. 1979)). A plaintiff can establish pretext by pointing "to some evidence, direct or circumstantial, from which

6

a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

### C.  The *McDonnell Douglas* Framework Applied to Plaintiff's NJLAD Claims

When the facts of this case are analyzed within the *McDonnell Douglas* framework, Plaintiff's NJLAD claim fails as a matter of law.

#### 1.  The Court assumes arguendo that Plaintiff has established a prima facie case of age-based employment discrimination.

The first step of *McDonnell Douglas* analysis requires Plaintiff to establish a prima facie case of employment discrimination.  The Court will assume arguendo that Plaintiff has done so, and proceed to the second stage of *McDonnell Douglas* analysis.

#### 2.  Wachovia has articulated a legitimate, non-discriminatory motive for Plaintiff's dismissal.

The second stage requires the defendant to articulate a legitimate, non-discriminatory motive for the plaintiff's dismissal.  At this stage, Wachovia is "merely required to articulate, not prove, [its] non-discriminatory motive." *Burdine*, 450 U.S. at 253.  Wachovia contends that Plaintiff was not terminated from employment because of his age but because of his "misuse of funds, falsification of documents, subornation of similar misconduct, and failure to cooperate in the related investigation."[2]  (Def.'s Mot. Br. at 8.)  The Court concludes that Wachovia's stated non-discriminatory reason for Plaintiff's termination is more than adequate to satisfy the low threshold established in *Burdine*.

---

[2]  For the purposes of deciding this motion, the Court will refer to these closely related reasons as one consolidated non-discriminatory reason: Plaintiff's misconduct.

### 3. Plaintiff has not established that Wachovia's articulated non-discriminatory reason for Plaintiff's termination is a pretext for discrimination.

The analysis now proceeds to the third stage of the *McDonnell Douglas* framework, in which Plaintiff is required to prove that Wachovia's articulated non-discriminatory motive was merely a pretext, or a "'cover-up' for a discriminatory purpose." *Bowles*, 993 F. Supp. at 262 (citations omitted). To satisfy its burden at this stage, Plaintiff must point "to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.[3] It is not enough for Plaintiff to "simply show that the employer's decision was wrong or mistaken;" rather, Plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Id.* at 765 (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992));

---

[3] In his opposition brief, Plaintiff does not explicitly address the arguments raised by Defendant in its motion for summary judgment or *McDonnell Douglas*; rather, Plaintiff contends that he has presented direct evidence thereby rendering *McDonnell Douglas* inapplicable. (Pl.'s Opp'n. Br. at 15.) This contradicts *Gross*, where the U.S. Supreme Court eliminated the necessity for drawing a distinction between direct and circumstantial evidence in determining whether a plaintiff's age was the "but-for" cause of the employer's action. 129 S.Ct. at 2351 (stating: "A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision."). This distinction was relevant before the Court held in *Gross* that *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) is not applicable to ADEA claims. *Id.* at 2352; *see* Butler v. Union Cnty. Prosecutor's Office, 2007 U.S. Dist. LEXIS 15154, *14 (D.N.J. 2007) ("In order to survive summary judgment on an ADEA claim based on less than direct evidence, a plaintiff must be able to proceed under the three-step *McDonnell Douglas* framework."). Thus, the Court will analyze Plaintiff's arguments applying the third stage of the *McDonnell Douglas* framework despite Plaintiff's omission.

*see also Keller*, 130 F.3d at 1109.

To that end, Plaintiff argues that the following points indicate Wachovia's asserted non-discriminatory reason for terminating Plaintiff is pretextual: i) alleged ageist comments made by Plaintiff's supervisor at Wachovia; ii) positive performance reviews Plaintiff received while employed at Wachovia; iii) Plaintiff's alleged authority to waive client fees; iv) Wachovia's alleged failure to follow it's own policies regarding employee discipline; v) the allegation that Wachovia changed its reasons for terminating Plaintiff's employment after he was dismissed; vi) the allegedly harassing nature of Wachovia's investigation of misconduct; and vii) an allegation that members outside the protected class have been treated differently than those within the protected class. (Pl.'s Opp'n. Br. at 16-25.) For the reasons that follow, the Court concludes that no reasonable factfinder could decide that Plaintiff's foregoing arguments demonstrate that Wachovia's articulated legitimate non-discriminatory reason for terminating Plaintiff – his misconduct – is a pretext for age discrimination. *Fuentes*, 32 F.3d at 764.

### i. The ageist comments allegedly made by Plaintiff's supervisor do not establish pretext.

Plaintiff alleges that the following three comments made by his supervisor, Peter Ameen, are ageist and evidence of pretext: (1) on November 20, 2007, "maybe one of the younger leaders can do what you can't"; (2) on March 7, 2008, "you're a dinosaur around here and there's a target on your back"; and (3) on April 9, 2008, "you better find out what your younger leader peers are doing". (Compl. ¶ 13.)  Assuming, as the Court must in the present context, that Ameen made the foregoing comments, the Court concludes that they do not provide a reasonable basis to infer pretext to discriminate as a matter of law.

The Third Circuit has stated that even where a comment was such that a "reasonable factfinder could draw an inference of age-based animus," it could not "reasonably be viewed as sufficient to prove by a preponderance of the evidence that age was a determinative cause of [employee's] termination" where the comment was made four or five months before the decision to terminate the employee and "did not refer to the question whether [employee] should be retained or fired." *Keller*, 130 F.3d at 1112. Moreover, "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." *Fuentes*, 32 F.3d at 767 (quoting *Ezold*, 983 F.2d at 545).

Applying that standard, Plaintiff cannot establish pretext based on the comments at issue for basic reasons. First, these three isolated comments were made over the course of six-months, the earliest a year before Plaintiff was terminated, the latest more than seven months prior to Plaintiff's termination. Therefore, at the minimum, there was a more than seven month gap between the last allegedly ageist comment made by Ameen, and Plaintiff's termination. A simple application of the foregoing legal standard makes clear that the temporal proximity of these comments to Plaintiff's termination is too remote to establish pretext, without more. In this instance, there is nothing more to support Plaintiff's assertion; and in fact, there is less. The evidence in the record indicates that Ameen, Plaintiff's supervisor and alleged ageist comment-maker, is approximately three years older than Plaintiff.[4] Additionally, there is no evidence in the record to support the notion that Ameen was the primary decisionmaker in Plaintiff's

---

[4] Peter Ameen was born on February 3, 1958. (Ameen Dep. at p. 7, line 23; Doc. No. 12.) As such, Ameen was fifty years old and within three months of his fifty-first birthday on November 17, 2008, the date Plaintiff was terminated. Therefore, Ameen is approximately three years older than Plaintiff.

November 17, 2008 termination. Even if Ameen were a decisionmaker, the time-line above renders it indisputable that Ameen's alleged ageist comments were unrelated to the decision process involved in Plaintiff's termination. For these reasons, Plaintiff's cited ageist comments fail to establish pretext as a matter of law.

### ii. Plaintiff's positive performance reviews do not establish pretext.

Next, in support of his assertion of pretext, Plaintiff presents certain positive performance reviews he received while a Wachovia employee; specifically, Plaintiff submits three performance reviews completed by Peter Ameen dated April 2005, April 2007, and March 2008. (Schalk Cert. Ex. C, E, F.) The Court concludes, however, that these performance reviews are of little relevance and are insufficient as a matter of law to create an inference of pretext in light of Wachovia's asserted non-discriminatory reason for terminating Plaintiff: specific misconduct. The evidence in the record establishes that Plaintiff's misuse of GL tickets – a cornerstone of Wachovia's misconduct assertion – was discovered in October 2008, approximately six months after the last performance review submitted by Plaintiff was completed. (Def.'s R. 56.1 ¶¶ 68, 157.) It follows that Plaintiff's alleged failure to cooperate with Wachovia's investigators – another cornerstone of Wachovia's misconduct assertion – took place even later. (Pl.'s Opp'n. Br. at 2.) Logically, therefore, because the events that Wachovia asserts gave rise to Plaintiff's termination were not discovered or did not occur until roughly six months after the most recent evaluation, this evidence cannot establish pretext as a matter of law.

### iii. That Plaintiff may have had the authority to waive client fees does not establish pretext.

Next, Plaintiff claims that he had the authority to waive client fees, and therefore,

Wachovia fired him for acting in a way which was consistent with his job duties and in doing so, evidenced pretext. (Pl.'s Opp'n. Br. at 20.)  Plaintiff's argument misses the mark.  Plaintiff's bald assertion that he had the authority or discretion to waive certain fees under certain circumstances is not an effective counter to Wachovia's assertion that Plaintiff was fired for specific instances of misconduct.  For instance, Wachovia presents evidence that Plaintiff signed a ticket debiting $151.48 to a fee-income-only GL account that stated the purpose of the debit was a refund.  (Pl.'s Reply at 8; Sisto Cert. Ex. D-14.)  Wachovia maintains that "[i]f true, that stated purpose would have been an improper use of an income-only account to make an expenditure. But the funds were actually used to generate a money order payable to America's Florist in order to purchase flowers for employees. [The] problem was . . . that [Plaintiff] signed a falsified document *and* improperly expended funds from an income-only account." (*Id*.)  Plaintiff has simply presented no evidence that suggests Plaintiff's termination for specific instances of misconduct, similar to that noted above, was pretextual.

### iv. Wachovia's policy regarding progressive discipline of its employees is not evidence establishing pretext.

Next, Plaintiff presents Wachovia's policy regarding progressive discipline of employees, apparently contending that the fact that Wachovia did not utilize its policy of "progressive discipline" before terminating Plaintiff is evidence of pretext. (Pl.'s Opp'n. Br. at 22-23.)  Plaintiff's argument is unfounded.  There is no pretext where "[the employee] has produced no evidence that [the employer] had a mandatory progressive disciplinary policy or that the defendants deviated from any such policy;" "[a]bsent such evidence, [the employee's] contention that he should have been disciplined instead of terminated cannot stand." *Smith*, 589 F.3d at 692

n.5.

Here, while Wachovia does have a "Corrective Action" policy, which maintains that "Wachovia's approach to discipline emphasizes problem resolution and behavior changes rather than punishment," this policy is not mandatory. (Schalk Cert., Ex. H.) Rather, the policy explicitly states that "Wachovia reserves the right to use all or none of the steps as it deems appropriate, depending upon the seriousness and frequency of the problem. Wachovia may impose corrective action up to and including dismissal for any reason at any time." (*Id.*) Moreover, in its guidelines supporting the Code of Conduct & Ethics ("Code"), Wachovia specifically provides that "[d]ishonest or fraudulent acts may result in immediate dismissal . . . ." (Gousman Cert. Ex. D-7.) In this case, the plain language of Wachovia's policies makes clear that the action taken by Wachovia was within that company's reserved rights. Further, the Court notes that Wachovia terminated not only Plaintiff, but numerous other, younger employees for related conduct.[5] Thus, no reasonable factfinder could find pretext on this basis.

### v. Plaintiff's allegation that Wachovia changed its reasons for terminating his employment after termination does not establish pretext.

Next, Plaintiff contends that Wachovia changed its reasons for terminating Plaintiff's employment from those that were given to Plaintiff at the time of his dismissal and that this is evidence of pretext. (Pl.'s Opp'n. Br. at 21-22.) Plaintiff maintains that "Wachovia's stated reason for the plaintiff's termination changed from initially not being cooperative to later

---

[5] Wachovia has presented evidence that supports these facts. (Def.'s R. 56.1 ¶¶ 3, 4.) In response, Plaintiff simply asserts the termination of other individuals is "irrelevant", "objects" to that information, and presents no rebutting evidence. (Pl.'s R. 56.1 Resp. ¶¶ 3, 4.) Simply put, the Court concludes that this information is highly relevant, and in light of Plaintiff's failure to either present rebutting evidence or even expressly deny Wachovia's assertion, the Court shall consider these facts undisputed.

unethical sales practices." (*Id*. at 8.)  Plaintiff provides no evidence in support of this point other than his own bald assertion.   Conversely, Wachovia presents evidence of an email composed by Joseph F. Kirk approximately four hours after Plaintiff's termination from employment.  Mr. Kirk was at that time a Retail Banking Executive for Wachovia, and in that capacity apparently supervised Mr. Ameen, as well as other Wachovia managers in New Jersey, New York, and Connecticut.[6]  In the email in question, Mr. Kirk outlined the various reasons for Plaintiff's termination, which included "'code of conduct' violations," "falsification of records," "structuring debits to service charge Gls to refund customers for loans costs [which] were processed in numerous small amounts charged to numerous branch cost centers in order to avoid detection," and "advising his employees to stracture [*sic*] transactions in the same manner when both the employee and kremp were paid incentives for these transactions." (Kirk Cert. Ex. A.)

      The law is clear that, "[t]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action . . . ." *Fuentes*, 32 F.3d at 764 (internal citations omitted).  Here, Kirk's contemporaneous email shows that none of Wachovia's articulated reasons are *post hoc* fabrications.  In any case, even if the Court were to accept as true Plaintiff's contention that the only reason he was given at the time of his termination was that he was uncooperative, the Court concludes that no reasonable factfinder could find that this reason is pretextual.  "The question is not whether the employer made the best, or even a sound,

---

   [6] Joseph F. Kirk was born on April 15, 1960.  (Kirk Dep. at p. 7, line 1; Doc. No. 12.)  As such, Kirk was forty-eight years old and within six months of his forty-ninth birthday on November 17, 2008, the date Plaintiff was terminated.  Therefore, Kirk is older than Plaintiff by at least one year.

business decision; it is whether the real reason is [discrimination]." *Keller*, 130 F.3d at 1109 (quoting *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996)). Wachovia's Code specifically provides that employees "who fail to cooperate fully with any inquiries or investigations[] will be subject to corrective action, possibly including termination." (Gousman Cert. Ex. D-5, Wachovia/Kremp 422.) Therefore, Plaintiff's foregoing argument fails to establish pretext as a matter of law.

>  **vi. Plaintiff's contention that Wachovia's investigation of misconduct constituted harassment does not establish pretext.**

Next, Plaintiff claims that Wachovia's investigation of misconduct constituted harassment, was an attempt to show Plaintiff as uncooperative, and as a result Wachovia's proffered reason for terminating his employment is pretextual. (Pl.'s Opp'n. Br. at 23-24.) In support of this argument, Plaintiff has presented no evidence beyond his allegations. Wachovia, on the other hand, has submitted the notes of the investigators into evidence, which show that Plaintiff's responses to most questions were claims of lack of knowledge or lack of memory. (Gousman Cert. Ex. P-2.) Simply put, Plaintiff's current argument nothing more than an unsupported allegation. Furthermore, even if Plaintiff did subjectively find the tenor of his interviews with Wachovia investigators distasteful, this fact is not evidence of pretext to discriminate against Plaintiff on the basis of his age. As a result, this argument fails as a matter of law.

>  **vii. Plaintiff's contention that members outside the protected class were treated differently from members within the protected class does not establish pretext.**

Finally, Plaintiff presents evidence of members outside the protected class being treated

differently from members within the protected class. (Pl.'s Opp'n. Br. at 25.) To this end, he refers to three employees with performance problems who were treated more favorably than Plaintiff. (*Id*.) This information is irrelevant. In Plaintiff's own words, these employees had performance problems unlike Plaintiff, who Wachovia found to have engaged in misconduct. (Pl.'s Opp'n Br. at 20; Def.'s Reply at 8-9, 14.) Moreover, as Wachovia points out, the eight employees involved in the same or similar misconduct as Plaintiff were terminated as a result of Wachovia's investigation and, of these, seven were younger than Plaintiff.[7] In light of these facts, no reasonable factfinder could find that Plaintiff was terminated for an "invidious discriminatory reason."

In sum, to survive summary judgment on his NJLAD claim, Plaintiff was required to provide, "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764 (3d Cir. 1994). As the Court has explained, Plaintiff has failed to carry this burden. No reasonable factfinder could determine that the evidence Plaintiff has presented establishes pretext. Summary judgment will therefore be granted to Wachovia on Plaintiff's age discrimination claim.

### III.   CONCLUSION

For the foregoing reasons, the Court will GRANT summary judgment to Wachovia on Plaintiff's NJLAD age discrimination claim. In light of this decision, the Court will order this case CLOSED. An appropriate form of order accompanies this memorandum opinion.

---

[7] See footnote 4, above.

Dated: October 12, 2010

                                              /s/ Garrett E. Brown, Jr.  
                                     GARRETT E. BROWN, JR., U.S.D.J.